UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA BUNTEA,

        Plaintiff,

v.

STATE FARM MUTUAL AUTO
INSURANCE CO.,

        Defendant.

_____/

Case No. 05-72399

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED
MOTION TO DISMISS [44] AND  DENYING  DEFENDANT'S APPEAL FOR REVIEW
OF THE MAGISTRATE JUDGE'S DECISION [48]**

      Pending before this Court are: (1) Defendant's renewed motion to dismiss, filed on

September 14, 2006, and (2) Defendant's request for review and appeal of the

magistrate judge's decision denying a protective order regarding discovery, filed on

September 29, 2006.

      Plaintiff Anita Buntea sued Defendant State Farm for its alleged failure to provide

the full benefits entitled to her under an insurance policy with Defendant.  On August 24,

2006, this Court granted Plaintiff's motion for leave to file a Second Amended

Complaint[1] and denied Defendant's motion for partial summary judgment[2] without

_____

      [1]Any references to the Complaint in this opinion refer to the Second Amended
Complaint.

      [2]Although styled as a motion for summary judgment, Defendant argued under the
appropriate standard of review for a motion to dismiss, and the Court considered the

prejudice, in order to give Defendant an opportunity to bring a motion to dismiss that addressed new claims contained in the Second Amended Complaint.  Specifically, Plaintiff's Second Amended Complaint brings claims of (1) silent fraud, (2) actual fraud, (3) breach of contract under the Michigan No Fault Act, MCL § 500.3101, *et seq*, (4) negligence, and (5) a violation of the Michigan Consumer Protection Act ("MCPA"), MCL § 445.901, *et seq.*  Defendant responded with the instant renewed motion to dismiss.[3] For the reasons set forth below, the Court GRANTS IN PART Defendant's renewed motion to dismiss and DENIES IN PART.  The Court also DENIES Defendant's appeal for review of the magistrate judge's decision.

## I.  Facts

On September 22, 1995, Plaintiff was involved in an automobile accident that rendered her a quadriplegic.  Plaintiff made a claim for first-party benefits under her automobile insurance policy with Defendant, and Defendant has since paid for much of her care.  This case concerns costs not covered by Defendant.

Plaintiff alleges that Defendant has failed to pay for, or inform her of its responsibility to pay for, several of her medical expenses.  She states that Defendant "had a policy of not paying family members and others commercially reasonable agency market rates for attendant care" and "of not informing its insureds of all benefits available under the insurance policy . . . ."  (Compl. ¶¶ 29-30.)  Plaintiff does not claim

––––––––––––––––––––

motion as a motion to dismiss.

[3]In addition to the instant motion to dismiss and the associated response, the Court will also consider the parties' earlier filings pertaining to Defendant's prior motion for summary judgment in ruling on this motion, as those filings included additional arguments regarding Plaintiff's claims.

2

that Defendant has refused to pay for claims that she submitted.  Rather, she argues in essence that Defendant understood its obligations to be greater than Plaintiff understood them to be, but concealed this fact to save money.

Plaintiff states that despite an occupational therapist's recommendation of a full twenty-four hours of attendant care, Defendant paid for only twelve hours of daily care by her mother and grandmother at $5 per hour in 1996, eight hours at $8 per hour beginning in 1998, and six hours at $12 per hour at present.  Plaintiff also claims that her family caregivers were entitled to commercially reasonable rates for similar care provided by an outside agency, that she is entitled to housing and educational expenses, and that Defendants concealed these additional policy benefits from Plaintiff.

## II.  Standards of Review

### A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint.  In a light most favorable to Plaintiff, the Court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief.  *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).  This standard of review "'requires more than the bare assertion of legal conclusions.'"  *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory."  *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted) (emphasis

3

in original).

### B.  Appeal for Review a Magistrate's Nondispositive Motion

A district judge reviewing a magistrate judge's nondispositive order may only reverse or modify the order if the findings were clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## III.  Analysis

Defendant attacks all or part of each of Plaintiff's claims under the Complaint.

### A.  Claims for Silent Fraud, Actual Fraud, Negligence and Claims Arising Under the MCPA may Coexist with Breach of Contract Claims

As an initial matter, Defendant argues that non-contract causes of action cannot coexist with breach of contract claims.  Defendant primarily relies on the following language from the Michigan Supreme Court, explaining the policies behind Michigan's No-Fault Insurance Act:

> The Michigan No-Fault Insurance Act, which became law on October 1, 1973, was offered as an innovative social and legal response to the long delays, inequitable payment structure, and high legal costs inherent in the tort (or "fault") liability system.  The goal of the no-fault insurance system was to provide victims of motor vehicle accidents with assured, adequate, and prompt reparation for certain economic losses.  The Legislature believed this goal could be most effectively achieved through a system of compulsory insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a vehicle legally in this state.  Under this system, victims of motor vehicle accidents would receive insurance benefits for their injuries as a substitute for their common-law remedy in tort.

4

*Cruz v. State Farm Mut. Auto. Ins. Co.*, 648 N.W.2d 591, 595 (Mich. 2002).

Defendant argues that the purpose and effect of the No-Fault Act is to preclude any cause of action that is related to an insurance contract, but alleged under a non-contract theory of law. Thus, Defendant contends that Plaintiff's silent fraud, actual fraud, negligence and MCPA claims should be dismissed because "Plaintiff's remedies . . . [are] exclusively contained in the no-fault statute according to the intent of the Legislature and the accompanying case law." (Def.'s Mot. for Summ. J. at 2.) The No-Fault Act, however, does not contain an exclusive remedy provision, and this omission must be considered intentional. *Farrington v. Total Petroleum, Inc.*, 501 N.W.2d 76, 80 (Mich. 1993).

In *Hearn v. Rickenbacker*, 400 N.W.2d 90 (Mich. 1985), the Michigan Supreme Court confronted a similar issue. The plaintiff and the defendant were parties to an insurance contract. When the plaintiff's property was destroyed by a fire, the defendant refused to pay the insurance claim, contending that the policy had been cancelled for nonpayment. The plaintiff then sued, filing a three-count complaint alleging breach of contract, fraud, and negligence. The breach of contract claim was based on the defendant's failure to pay the insurance claim. The fraud claim was based on "the actions and misrepresentations" of the defendant. And the negligence claim was based on the defendant's "breach of various duties alleged to be owed to the plaintiff." *Id.* at 91. The insurance policy at issue provided that no lawsuits "on this policy . . . shall be sustainable . . . unless commenced within twelve months next after inception of the loss." *Id.* at 92. The precise issue before the court was "whether the plaintiff's fraud and negligence counts amount to actions 'on this policy' for purposes of applying the

5

twelve-month limitation period." *Id.*

The court cited with approval a California court's finding that the "nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations." *Id.* (quoting *Richardson v. Allstate Ins. Co.*, 117 Cal. App. 3d 8, 12 (Cal. Ct. App. 1981)). The court also accepted an Ohio court's finding that tort liability "does not arise from . . . [the insurer's] mere omission to perform a contract obligation . . . . Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties." *Id.* (quoting *Plant v. Illinois Employers Ins. of Wausau*, 485 N.E.2d 773, 775 (Ohio Ct. App. 1984)).[4] In addition to these foreign authorities, the *Hearn* court relied upon an 1892 Michigan Court of Appeals case holding that

> a mere contract obligation may establish no relation out of which a separate and specific legal duty arises, and yet extraneous circumstances and conditions in connection with it may establish such a relation as to make its performance a legal duty, and its omission a wrong to be redressed. The duty and the tort grow out of the entire range of facts of which the breach of the contract was but one.

*Id.* at 94 (quoting *Oliver v. Perkins*, 52 N.W. 609, 612 (Mich. Ct. App. 1892)).

Based on these authorities, the court held that the plaintiff's fraud and negligence claims were not in fact "on the policy," since they were not "truly contractual in nature." *Id.* The court explained,

> [T]he relationship between insurers and their insureds is "sufficient to

___

[4]In *Plant*, the Ohio court was analyzing a tort cause of action that does not exist in Michigan--breach of an insurer's duty to act in good faith in the handling and payment of claims. The Michigan Supreme Court explicitly declined to adopt this tort, but nevertheless found *Plant*'s analysis applicable to claims that are recognized under Michigan law. *Hearn*, 400 N.W.2d at 93.

permit fraud to be predicated upon a misrepresentation." An action for
fraud is not an action on the policy; it is an action in tort that arose when
the fraud was perpetrated.

The same reasoning applies to the plaintiff's negligence claims. If the
defendant has breached a legal duty owed to the plaintiff apart from the
contract of insurance, then there may be liability in tort.

. . .

The fact that a lawsuit seeks to recover a loss that was covered by an
insurance policy, alone, should not dictate the nature of a plaintiff's claims
. . . . Although the contract of insurance may be one source of the
insurer's obligation to pay the loss, the insurer may also be held liable for
tortious conduct that is wholly separable from its purely contractual duties.

*Id.* at 93-94.

Just as in *Hearn*, Plaintiff's silent fraud, actual fraud, negligence and MCPA claims

are not "on the policy." While Plaintiff's contract claim seeks enforcement of the

insurance policy, her fraud and negligence claims seek to recover for entirely separate

tortious conduct. The MCPA claim alleges that Defendant misrepresented facts,

communicated improperly, and failed to explain benefits, amongst other things. (Compl.

§§ 66-67.) As a matter of law, therefore, Plaintiff may pursue negligence, actual fraud,

silent fraud and MCPA claims alongside her breach of contract claim.

**B. Plaintiff has not Stated a Claim Based on Silent Fraud**

Even before reaching the issue of whether a plaintiff has met the prima facie

elements of a silent fraud claim in Michigan, the plaintiff must first show that the alleged

silence "occurred under circumstances where there was a legal duty of disclosure."

*M&D Inc. v. W.B. McConkey*, 585 N.W.2d 33, 37 (Mich. Ct. App. 1998) (citing *United*

*States Fid. and Guar. Co. v. Black*, 313 N.W.2d 77 (Mich. 1981)). The

misrepresentation occurs when a party suppresses part of the truth when asked, not by

7

mere nondisclosure.  *Id.*, at 39.  Defendant argues that it had no such legal or equitable duty to disclose to Plaintiff the benefits under her policy, and notes that Plaintiff does not allege that she asked Defendant to describe all of the benefits to which she was entitled.

In an attempt to find a duty of disclosure, Plaintiff argues that the Unfair Trade Practices Act ("UTPA") creates a statutory duty to provide an explanation of the benefits available to an insured under the policy, and not to misrepresent such benefits.  Plaintiff proffers an unpublished decision by the Macomb County Circuit Court on this issue, *Paquette v. State Farm Mutual Auto. Ins. Co.*, No. 2004-2787-NO (Mich. Macomb Co. Cir. Ct. July 13, 2006).  The *Paquette* court concluded, without any form of supporting analysis, that the UTPA imposes a duty of care upon insurers not to misrepresent insurance policy provisions, and that the plaintiff adequately asserted a silent fraud claim when he alleged misrepresentation.  *Id.*  Plaintiff advances a similarly unsupported argument that a variety of duties upon insurers created by the UTPA under MCL §§ 500.2006(3) and 500.2026 indicate that there is also a duty to disclose policy benefit information.

This Court declines to adopt the *Paquette* court's or Plaintiffs' unsupported assertions in this matter.  Although the cited section of the UTPA creates, among others, a statutory duty on insurance carriers not to misrepresent benefits to policy holders, a review of the statute does not reveal any form of affirmative duty to disclose. The existence of a number of enumerated duties does not automatically mean inclusion of a duty to disclose that is not listed in the statute's provisions, thus there is no such duty created here.

8

The statutory duty not to misrepresent that does exist under the UTPA would arise if an insured asked her insurance carrier the extent of her benefits, and the insurer gave an incomplete answer.  Here, however, Plaintiff merely alleges silence, without any accompanying request to Defendant regarding the extent of her benefits that would trigger a duty to respond with full disclosure.

Plaintiff also attempts to rely on several cases to imply a duty under these circumstances.  *Johnson v. State Farm Mutual Auto. Ins. Co.*, 455 N.W.2d 420 (Mich. Ct. App. 1990), *rev'd on other grounds*; *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539 (Mich. 2005); and *Hudick v. Hastings*, 637 N.W.2d 521 (Mich. Ct. App. 2001) involved circumstances where the plaintiffs claimed that they notified the defendant insurers of a loss but were not told of possible coverage under an associated policy. None addressed the question at issue in this case, namely, whether the insurance company owes the insured a duty to disclose coverage even if the insured does not question the benefits offered.  At best, the *Johnson* court indicated in dicta that the insured should be able to reasonably rely upon their insurance company to inform them of the benefits included under their insurance policy, and the *Hudick* court included a reference to this language in a footnote, but did not provide any further analysis.  This Court is not convinced that these cases provide persuasive authority to adopt Plaintiff's argument on the imposition of a duty, especially where no previous court has directly reached such a holding.[5]

---

[5]Plaintiff also cites *Hearn v. Rickenbacker*, 364 N.W.2d 371 (Mich. Ct. App. 1985) and *Drouillard v. Metropolitan Life Ins. Co.*, 310 N.W.2d 15 (Mich. Ct. App. 1981).  Since both of these cases involved actual fraud, and not silent fraud, they do not deserve further consideration here.

Lastly, Plaintiff asserts that Defendant voluntarily adopted a duty to disclose policy benefits based upon a State Farm document titled "Our Commitment to Our Policyholders."  (Compl. ¶ 26; Ex. A.)  Plaintiff does not describe the context in which she received the document, but it appears to be a standard form that might be included with a policy or corporate marketing materials, as it is not signed by either party.  If sufficiently tied to the insurance contract between Plaintiff and Defendant, the document might lead to a *contractual* duty to disclose coverages under the policy, but such a duty would then fall under Plaintiff's breach of contract claim, and not her claim for silent fraud.  Furthermore, Plaintiff provides no authority for the proposition that the individual document could create a duty under Michigan tort law.  Therefore, the Court finds this argument inapplicable to Plaintiff's silent fraud claim.

For all of the above reasons, Plaintiff's silent fraud claim is insufficient as a matter of law and must be dismissed.

### C.  Plaintiff has not Stated a Claim Based on Actual Fraud

Under Michigan law, a Plaintiff must state the following elements to have a valid claim for fraud: (1) the defendant made a material misrepresentation, (2) the misrepresentation was false, (3) the defendant knew the statement was false when made, (4) defendant intended that the plaintiff act upon the statement, (5) the plaintiff actually acted upon the statement, and (6) plaintiff suffered damages as a result.  *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976).  Further, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity."  Plaintiff is correct that the heightened pleading standard of Rule 9(b) must be applied in light of the "general

10

principles" of notice pleading contained in Rule 8, but a viable fraud claim cannot rest on mere assertions or conclusions and survive a motion to dismiss.  *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006).  "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir.1993)).

A review of Plaintiff's allegations of fraud contained in subparagraphs 37(c)-(d) show that they do not meet the Rule 9(b) standard, as there is no specificity whatsoever regarding the time, place and content of the alleged fraud:

> (c)  At various times during the pendency of this claim, State Farm, through its claim representatives and agents, including case managers hired by State Farm, represented to Plaintiff that she was not entitled to full reimbursement of her education costs.
>
> (d)  At various times during the pendency of this claim, State Farm represented to Plaintiff that it did not need to provide flooring suitable for a wheelchair-bound insured with home modifications.

(Compl. ¶¶ 37(c) and (d).)

Therefore, these allegations cannot support a valid fraud claim.

Plaintiff's other allegations of fraud from subparagraphs 37(a), (b) and (e) essentially state that by notifying her that Defendant would pay a certain level of attendant care benefits, Defendant created a "false impression" that these were the only benefits Plaintiff was entitled to under the policy.  Such action was fraudulent, Plaintiff asserts, because Defendant knew she was entitled to a higher level of benefits than it originally offered to her.  At no point does Plaintiff claim that she questioned Defendant

11

regarding the possibility of being eligible for additional benefits than those Defendant offered, nor does she offer any pertinent case law to support the assertion that false impressions are sufficient to support a claim for fraud.[6]

In actuality, such statements regarding an initial offer of benefits to an insured do not constitute the misrepresentation required for a viable fraud claim under Michigan law. *Bromley v. Citizens Ins. Co. of Am.*, 317 N.W.2d 318, 320 (Mich. Ct. App. 1982). On somewhat similar facts as the instant case, the *Bromley* court held that the defendant insurance company did not commit fraud upon its insured when the company responded to the plaintiff's inquiry regarding coverage for an accident by stating that the policy did not apply under the circumstances involved.  "Defendant merely told plaintiff its reasonable position on the question of coverage.  It was incumbent upon plaintiff at that time to seek legal assistance if he disagreed. . . .  Since the statements were not false in fact at the time made, no misrepresentation action was pled."  *Id.*  Plaintiff's attempts to distinguish *Bromley* rest upon incorrect factual descriptions of that case, concern dicta rather than the court's actual holding, and rely on a case that distinguished *Bromley* for reasons different than those at issue here.  As a result, this Court remains convinced that *Bromley* is applicable to this case.

Without any allegations that Defendant affirmatively told Plaintiff that the benefits offered were all she was entitled to, and that this statement was known by Defendant to be false, Plaintiff's fraud claim must fail as a matter of law.  On facts such as these that

---

[6]Plaintiff's sole authority is an early 19th century case from the U.S. Supreme Court, *Smith v. Richards*, 38 U.S. 26 (1832).  Aside from not applying Michigan law, the facts of *Smith* are inapplicable here, as that case involved an equitable claim for the defendant's actions that misled the plaintiff during a contractual negotiation.

12

lack a specific request from Plaintiff and a resulting affirmation of fact by Defendant, the alleged actions were more akin to an offer, rather than a representation that could support a fraud claim.

Lastly, Plaintiff's Complaint raises a number of alleged statements from past employees of Defendant that indicate Defendant may have internal policies to misrepresent the available benefits under a claim unless asked by the insured.  While this background may serve to set the context for Plaintiff's specific fraud claims at issue in this case, the fact remains that Plaintiff has been unable to plead a fraud claim with the requisite level of specificity.  As a result, the issue of Defendant's conduct with regards to other insureds besides Plaintiff is irrelevant to this case.

For all of the above reasons, Plaintiff's claim for fraud must be dismissed as a matter of law.

### D.  Plaintiff has not Stated a Claim Based on Negligence

To establish a prima facie case of negligence, Plaintiff must prove: (1) defendant owed plaintiff a duty; (2) defendant breached that duty; (3) causation; and (4) damages. *See Case v. Consumers Power Co.*, 615 N.W.2d 17, 20 (Mich. 2000).  As discussed fully above, Defendant did not have a legal duty to disclose benefits to Plaintiff that would support a silent fraud claim.  Commensurate with that finding, Defendant also does not have a duty to Plaintiff that would support a negligence claim.  Defendant has a duty not to misrepresent or withhold information regarding Plaintiff's policy, if asked, but Plaintiff does not allege these facts.  Plaintiff merely alleges that Defendant did not disclose the benefits under the policy, but this Court has already found that Defendant does not have a duty to do so.  Plaintiff's negligence claim must be dismissed as a

13

matter of law because Defendant did not owe Plaintiff a duty to disclose the policy's benefits without being asked.

### E. Plaintiff's Breach of Contract Damages

Defendant claims that Plaintiff's overall damages for its alleged breach of contract are limited in two respects: (1) any damages are limited to those incurred by Plaintiff after July 1, 2004, which is one year prior to when she filed this lawsuit, pursuant to MCL § 500.3145, and (2) Plaintiff is not entitled to benefits for housing or educational expenses because those are not required as a result of her injuries.

#### 1. The "One Year Back" Rule of MCL § 500.3145 limits Plaintiff's breach of contract damages

A plaintiff's ability to claim personal protection insurance benefits, such as those at issue in this case is limited by MCL § 500.3145 in a number of ways.  Typically, an insured must file a lawsuit within one year after the date of the accident causing injury. The situation is different when, as here, the insurance company has paid benefits under the policy.  Then, the insured may still bring a suit more than one year after the injury, except that "the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced."  MCL § 500.3145.  The Michigan Supreme Court has confirmed that this is a damages limitation provision, and not a statute of limitations.  *Cameron v. Auto Club Ins. Ass'n*, 718 N.W.2d 784, 788-89 (Mich. 2006); and *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 574 (Mich. 2005).  Therefore, traditional judicial tolling doctrines that might support tolling a statute of limitations, such as insanity or infancy of a party, do not apply to the one year back rule.

14

This is not to say that the Michigan Supreme Court has held the one year rule is completely inflexible, with no place for certain equitable ideals to extend the applicable damages period.  In *Devillers*, the court noted that "courts undoubtedly possess equitable power, [but] such power has traditionally been reserved for 'unusual circumstances' such as *fraud* or mutual mistake."  702 N.W.2d at 556 (citing *Cincinnati Ins. Co. v. Citizens Ins. Co.*, 562 N.W.2d 648 (Mich. 1997), emphasis added).  Plaintiff claims that the alleged fraud in this case is just such an unusual circumstance that warrants this Court applying equitable principles to suspend the one year back rule.  As noted previously, however, Plaintiff's fraud claims are not valid as a matter of law, so there is no actionable fraud under which to suspend the one year back rule here.

Under a plain reading of the one year back rule, Plaintiff's breach of contract claim is limited to damages suffered since July 1, 2004, which is one year prior to the date this case was filed.

### 2.  Consideration of whether Plaintiff is entitled to housing and educational expenses is beyond the scope of review for a motion to dismiss

Defendant argues that Plaintiff is not entitled to reimbursement for further housing and educational expenses, as she has not proven that these expenses are necessary as a result of her injuries.  *See Griffith v. State Farm Mutual Auto. Ins. Co.*, 697 N.W.2d 896 (Mich. 2005) (holding that the plaintiff-insured was not entitled to expenses for food where his injuries from the accident did not necessitate a special diet different from that of an uninjured person).  At this stage of the proceedings, resolution of Defendant's argument on this point involves investigation into a variety of facts, most notably the specific benefits the policy provided and Plaintiff's subjective need for the claimed

15

benefits because of her injuries.  This Court cannot conduct this type of factual inquiry

on a motion to dismiss, so Defendant's motion is denied on this issue.

### F.  Plaintiff has Stated a Claim based on the MCPA

Plaintiff's claim under the MCPA requires this Court to consider two difficult legal

questions surrounding the interplay between the MCPA and Michigan law governing

insurance companies under the UTPA.  First, whether an amendment of the MCPA to

specifically exclude claims arising out of dealings with an insurance agency that are

covered under the UTPA should be applied retroactively to bar Plaintiff's claims, and

secondly, whether the one year back rule in § 500.3145 of the UTPA applies to cases

that are also brought under the MCPA.  The Michigan Supreme Court has not ruled

definitively on either issue.

### 1.  The MCPA modification contained in MCL § 445.904(3) does not apply retroactively

Under current Michigan law, and effective since March 28, 2001, there is no cause

of action under the MCPA for actions that also violate certain provisions of the UTPA

that apply to insurance companies.  MCL § 445.904(3).  Therefore, Plaintiff has no claim

under the MCPA for any damages incurred since March 28, 2001, as all of her MCPA

claims rest on violations of the UTPA.  (Compl. ¶¶ 65-71.)  A question exists, however,

as to whether she has an MCPA claim for her damages over the period of

approximately one year and nine months going back from March 28, 2001 until July 1,

1999, when the MCPA's six year statute of limitations would kick in and bar any older

claims.  MCL § 445.911(7).

Defendant argues that a private cause of action no longer exists on these facts

under the MCPA, but the case of *Grant v. AAA Michigan, Wisconsin, Inc.*, 707 N.W.2d

592 (Mich. 2005) ("*Grant II*") (vacating *Grant v. AAA Michigan, Wisconsin, Inc.*, 703

N.W.2d 196 (Mich. Ct. App. 2005) ("*Grant I*")) indicates that such a cause of action still

exists for those claims that arose prior to the March 28, 2001 amendment of the MCPA.

Resolution of the issue demands a detailed examination of the related cases and the

MCPA amendment, and suggests that the MCPA amendment did not apply

retroactively.

The first case in this line was *Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich.

1999), where the Michigan Supreme Court held that the MCPA provides a private cause

of action for violations of the UTPA:

> [W]e conclude that private actions are permitted against an insurer
> pursuant to § 11 of the MCPA . . . .  Therefore, the exemptions provided
> by §§ 4(1)(a) and 4(2)(a) [for certain activities regulated under the UTPA]
> are inapplicable to plaintiff's MCPA claims to the extent that they involve
> allegations of misconduct made unlawful under [the UTPA].

*Id.* at 39.

In response to *Smith*, the Michigan legislature amended the MCPA to provide that

"[t]his act does not apply to or create a cause of action for an unfair, unconscionable, or

deceptive method, act, or practice that is made unlawful by [certain insurance-related

provisions of the UTPA]."  Mich. Comp. Laws  § 445.904(3).  This amendment was

effective March 28, 2001.  2000 Mich. Pub. Acts 432.

In June of 2005, the Michigan Court of Appeals issued its opinion in *Grant I.*

There, the plaintiff sought relief under the MCPA for conduct similar to that alleged in

the present case, i.e., the defendant insurer misrepresented, and failed to disclose, the

true scope of the plaintiff's no-fault insurance coverage.  As here, the underlying

17

accident occurred in 1995, prior to the *Smith* decision, and the Michigan legislature's

subsequent amendment to the MCPA.  The Michigan Court of Appeals held that the

plaintiff's claim was merely a repackaged claim for no-fault benefits, and because she

had exceeded the one year damages limitation applicable to such claims, the MCPA

could provide no relief:

> Assuming the truth of [her] allegations, plaintiff's relief would be the
> no-fault benefits of which she was wrongfully deprived. . . .  Accordingly,
> no relief is available to plaintiff because Mich. Comp. L. § 500.3145(1)
> bars recovery of benefits for any loss incurred more than one year before
> the filing of a plaintiff's complaint. . . .
>
> All plaintiff's losses were incurred more than one year before she filed her
> complaint.  Accordingly, defendant was entitled to summary disposition
> despite plaintiff's labeling count VI as an MCPA claim.  The claim was
> nothing more than a claim for no-fault benefits couched in terms of a claim
> under the MCPA.  We will not "[rely] on the superficial language of the
> complaint while ignoring its substance."

*Grant I*, 703 N.W.2d at 201-02 (quoting *Crown Tech. Park v. D&N Bank, F.S.B.*, 619
N.W.2d 66, 74 (Mich. Ct. App. 2000)).

On December 8, 2005—after the original Complaint had been filed in the present

case—the Michigan Supreme Court decision in *Grant II* vacated the Court of Appeals's

decision in *Grant I.*  In a short order, the court remanded the case to the Court of

Appeals "for reconsideration in light of our decision in *Smith* . . . , holding that [the

MCPA] permit[s] private actions against an insurer . . . ."  *Grant II*, 707 N.W.2d at 592.

Thus, despite the Michigan legislature's amendment to the MCPA, the Michigan

Supreme Court appears to have held that *Smith* remains good law as to claims relating

to events occurring prior to the MCPA amendment.  In other words, the Michigan

Supreme Court's decision reversing *Grant I* implicitly held that MCL § 445.904(3) does

not apply retroactively, because there would have been no claim on which to remand

18

the case if the court felt otherwise.

Michigan law on the retroactivity of newly enacted statutes buttresses this conclusion as well. "Generally, statutes are applied prospectively unless the Legislature has expressly or impliedly indicated its intent to give retroactive effect or unless the statutes are remedial or procedural in nature." *Cipri v. Bellingham Frozen Foods, Inc.*, 539 N.W.2d 526, 528-29 (Mich. Ct. App. 1995). A statute is considered remedial or procedural if it is written to correct an oversight in the law. *Allstate Ins. Co. v. Faulhaber*, 403 N.W.2d 527, 529 (Mich. Ct. App. 1987). Additionally, "'[w]hen [an] amendment [is] passed in the midst of a controversy over a provision's meaning, the usual presumption that an amendatory act declares new law is overcome and a legislative intent to clarify rather than to change the law may be inferred.'" *In re Oswalt*, 444 F.3d 524, 528 (6th Cir. 2006) (citing *Workman v. Detroit Auto. Inter-Ins. Exch.*, 274 N.W.2d 373, 391 (Mich. 1999)). On the other hand, "a law may not apply retroactively if it abrogates or impairs vested rights, creates new obligations, or attaches new disabilities regarding transactions or considerations already past." *Doe v. Dept. of Corrections*, 641 N.W.2d 269, 276 (Mich. Ct. App. 2001).

The Michigan Supreme Court's understanding of the amendment in *Grant II* is well-reasoned because the amendment does not contain any language stating or implying that it should apply retroactively and overcome the general presumption is that statutes apply prospectively. Furthermore, although the Michigan Legislature may have passed the amendment to abrogate the cause of action recognized in *Smith* due to the sequential timing of the case and the subsequent amendment, there does not appear to

19

have been a controversy over the provision's meaning.  Finally, this amendment is substantive, not procedural, because if applied retroactively, it would deny Plaintiff of her vested right to bring a cause of action based on the MCPA, a right that vested prior to the 2001 amendment.  Therefore, the Court finds that the amendment only applies prospectively, and Plaintiff's MCPA claim is not barred as a result of the 2001 amendment to the MCPA.

### 2.  The UTPA's one year back rule limiting Plaintiff's available breach of contract damages does not apply to her MCPA claim

Alternatively, Defendant argues that Plaintiff's MCPA claim is actually a UTPA claim, and, therefore, that the UTPA's one year back damage limitation provision should be applied to this claim as well.  If the Court adopted Defendant's argument on this point, Plaintiff's only remaining MCPA damages – for the period July 1, 1999 to March 28, 2001 – would also be barred.  As mentioned previously, the Michigan Supreme Court's brief opinion in *Grant II* vacating *Grant I* would not have been necessary if the MCPA amendment were applied retroactively.  It also would not have been necessary if the UTPA's one year back rule applied to MCPA claims, as all of the plaintiff's damages in that case arose more than two years before the time she filed suit.  Therefore, by vacating and remanding the case, the Michigan Supreme Court also indicated that it disagreed with the *Grant I* court's holding that the one year back rule applied to MCPA claims that sounded under the UPTA as well.

In holding that the one year back rule applied under the MCPA as well as the UTPA, the *Grant I* court cited *Local 1064 RWDSU AFL-CIO v. Ernst & Young*, 535

20

N.W.2d 187, 189 n.10 (Mich. 1995), which held that "[i]t is well accepted that in ruling on a statute of limitations defense the court may look behind the technical label that a plaintiff attaches to a cause of action to the substance of the claim asserted."  The court then analogized to an earlier Michigan Court of Appeals case that held a plaintiff could not use a traditional negligence or promissory estoppel claim to get around a statutory requirement for a signed writing under the statute of frauds.  *Crown Tech. Park v. D & N Bank, FSB*, 619 N.W.2d 66, 71-74 (Mich. Ct. App. 2000).  The applicable statute of frauds under MCL § 566.132(2) that was at issue in *Crown Technology* states: "[a]n action shall not be brought against a financial institution to enforce [a variety of promises or commitments of a financial institution, including an alleged oral waiver of the bank's right to a prepayment penalty] unless the promise or commitment is in writing and signed with an authorized signature by the financial institution."  The *Crown Technology* court interpreted this subsection "to preclude *all* actions for the enumerated promises and commitments," based upon the broad nature of the language used.  619 N.W.2d at 72 (emphasis in original).

The statutory language from the UTPA, however, is not written as broadly as that from the statute of frauds provision addressed in *Crown Technology*.  The subsection containing the UTPA's one year back provision begins: "[a]n action for recovery of personal protection insurance benefits *payable under this chapter* for accidental bodily injury . . . ."  MCL § 500.3145(1) (emphasis added).  The UTPA and the damages limitation provision at issue appear in Chapter 31 of the Insurance Code of 1956, while the MCPA is an entirely different part of the Michigan Compiled Laws.

In diversity actions where there is no controlling precedent from either the Michigan Supreme Court or the Sixth Circuit, this Court "must attempt to discern the result the Michigan Supreme Court would reach in the event it addressed this issue." *Harrow Prods., Inc. v. Liberty Mutual Ins. Co.*, 64 F.3d 1015, 1022 (6th Cir. 1995). Therefore, even though the Michigan Court of Appeals held that the UTPA's one year back provision applied to an action that was also brought under the MCPA in *Grant I*, that decision is not necessarily controlling here. In fact, several circumstances surrounding the *Grant I* decision and its subsequent review by the Michigan Supreme Court indicate that the Michigan Supreme Court disagrees with the *Grant I* holding.

First of all, the qualification that the one year back rule only applies to actions under the UTPA weakens the argument for extension of that provision to other sections of the Michigan Compiled Laws compared to the broad statue of frauds provision that the *Crown Technology* court interpreted. As a result, this Court is not persuaded that the *Grant I* court's analogy to *Crown Technology* is sound. Secondly, and as discussed previously, if the Michigan Supreme Court agreed with *Grant I's* holding on either the issue of the 2001 MCPA amendment's retroactivity or the applicability of the one year back provision to the MCPA, there would have been no reason to vacate *Grant I* in the first place. This may be parsing the lines of a short and somewhat cryptic opinion, but the inference remains. Lastly, the Michigan Court of Appeals' decision on remand in *Grant v. AAA Michigan Wisconsin, Inc.*, ___ N.W.2d ___, 272 Mich. App. 142 (Mich. Ct. App. 2006) ("*Grant III*") that basically reissued its earlier decision in *Grant I* is currently being appealed to the Michigan Supreme Court, so a definitive answer may be given if

22

that court again decides to review the case.[7]  Under such circumstances, this Court is
not convinced that the Michigan Supreme Court would allow *Grant I* and *Grant III* to
stand if it were to review the case again, and finds that the one year back rule of the
UTPA does not apply to Plaintiff's claim under the MCPA.[8]

Therefore, Plaintiff has a claim under the MCPA for her damages accruing
between July 1, 1999 and March 28, 2001.

### G.  Appeal for Review of the Magistrate Judge's Opinion

Defendant also seeks review and reversal of Magistrate Judge Scheer's
September 20, 2006 order denying Defendant's motion for a protective order regarding
discovery, and ordering that Defendant respond to Plaintiff's discovery requests by
October 4, 2006.  In support, Defendant argues that most of the material Plaintiff is
requesting would be moot if this Court rules in Defendant's favor on the instant motion
to dismiss, because the material only applies to Plaintiff's non-contractual claims.
Defendant's position disregards the proper standard of review in this case, which only
allows this Court to reverse Magistrate Judge Scheer's order if it is either clearly

---

[7]Defendant filed a supplemental brief on December 5, 2006, citing a recent
unpublished case by the Michigan Court of Appeals that came to the same conclusion
as the court in *Grant III* regarding the one year back rule also barring MCPA claims that
could have arisen under the UTPA.  *See Cooper v. Auto Club Ins. Ass'n*, No. 261736
(Mich. Ct. App. Nov. 21, 2006).  This Court does not see why the above reasoning
regarding the likelihood of the Michigan Supreme Court disagreeing with *Grant III* would
change with regards to *Cooper*, however, as that case is indistinguishable from *Grant III*
on the relevant issues.

[8]Of course, if the Michigan Supreme Court should affirm *Grant I* and *Grant III* by
not granting the motion for review in that case, Defendant could bring a motion to
dismiss or a motion for summary judgment at a future date.

erroneous or contrary to law.  In fact, Defendant does not even mention the applicable standard in its brief, nor make any assertions regarding the support for the order. Therefore, Defendant's appeal on this point is denied, and Defendant is ordered to comply with Plaintiff's discovery request by January 15, 2007.[9]

## IV. Conclusion

For the reasons stated above, the Court GRANTS IN PART Defendant's Motion to Dismiss and DENIES IN PART.  Specifically, the Court GRANTS Defendant's motion in full as to Plaintiff's silent fraud, actual fraud, and negligence claims, GRANTS IN PART Defendant's motion as to the MCPA claim by dismissing any part of Plaintiff's damages under this claim arising either (i) prior to July 1, 1999, or (ii) after March 28, 2001, and GRANTS IN PART Defendant's motion as to Plaintiff's breach of contract claim by dismissing any part of Plaintiff's damages under this claim arising prior to July 1, 2004. Finally, the Court DENIES that portion of Defendant's motion seeking dismissal of Plaintiff's claim for benefits regarding housing and education expenses.  As a result of this Order, Plaintiff's remaining claims include: (1) breach of contract for damages occurring after July 1, 2004, and (2) unlawful trade practices under the MCPA from July 1, 1999 until March 28, 2001.

Defendant's appeal for review of the magistrate judge's order is DENIED, and Defendant is ordered to comply with Plaintiff's discovery requests by January 15, 2007.

---

[9]The effect of this order will reduce Plaintiff's available claims significantly, so nothing restrains Defendant from filing another motion for protective order if the requested materials are now immaterial given the remaining claims.

24

SO ORDERED.


s/Nancy G. Edmunds

Nancy G. Edmunds

United States District Judge


Dated:  December 19, 2006


I hereby certify that a copy of the foregoing document was served upon counsel of record on December 19, 2006, by electronic and/or ordinary mail.


s/Carol A. Hemeyer

Case Manager